UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

THOMAS KENYON,

            Plaintiff,                         Civil No. 08-247-HA

            v.                                 OPINION AND ORDER

COMMISSIONER of Social Security,

            Defendant.
_____

HAGGERTY, District Judge:

        Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act (the

Act).  Plaintiff requests judicial review of a decision by the Commissioner of the Social Security

Administration (SSA) denying his application for disability insurance benefits (DIB).  He seeks

an order reversing the Commissioner's decision and remanding this case for an award of benefits.

This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).  After reviewing the

record of this case and evaluating counsel's arguments, this court concludes that outstanding

issues remain that must be resolved before a determination of disability can be made, and that the

Commissioner's decision must be remanded for further proceedings.

1  - OPINION AND ORDER

## ADMINISTRATIVE HISTORY

Plaintiff protectively filed his applications for DIB benefits on September 1, 2003.  Tr. 76-79.[1]  Plaintiff's applications were denied initially and upon reconsideration.  An administrative law judge (ALJ) conducted a hearing on January 12, 2006, at which plaintiff and vocational expert (VE) Francene Geer testified.  Tr. 530-68.

On June 26, 2006, the ALJ issued a decision finding that there were a significant number of jobs in the national economy that plaintiff could perform in light of his residual functional capacity (RFC).  Tr. 30-36.  Plaintiff was found not disabled within the meaning of the Act.  The Appeals Council denied plaintiff's request for review, rendering the ALJ's conclusions the Commissioner's final decision for purposes of obtaining this judicial review.

## FACTUAL BACKGROUND

Plaintiff was born in August, 1952.  Plaintiff claims he has been disabled since September 1, 2001.  His alleged impairments include fibromyalgia, major depression, and migraines.  He was last insured for disability benefits December 31, 2003.

In September 2003, the Department of Veterans Affairs (VA) granted plaintiff seventy percent service connection for Major Depressive Disorder, fifty percent service connection percentages for migraine headaches, twenty percent service connection for fibromyalgia, and ten percent service connection for glaucoma.  Tr. 81-82.  His combined rating total was ninety percent.  The VA granted plaintiff "entitlement to 100 percent rate effective December 28, 2001, because [plaintiff was] unable to work" due to service-connected disabilities.  Tr. 83.

---

1    Citations beginning with "Tr." refer to pages in the official transcript of the administrative record filed with the Commissioner's Answer.

2  - OPINION AND ORDER

Other details regarding plaintiff's history and health status will be addressed below as necessary to this court's ruling.

**<u>STANDARDS</u>**

To establish an eligibility for benefits, a plaintiff has the burden of proving an inability to engage in any substantial gainful activity (SGA) "by reason of any medically determinable physical or mental impairment" that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for benefits because of disability. 20 C.F.R. §§ 404.1520, 416.920; *see also Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007).

First, the Commissioner determines whether the claimant is engaged in SGA. If the claimant is so engaged, disability benefits are denied.

If not, the Commissioner proceeds to step two and determines whether the claimant has a medical impairment that meets the regulatory definition of "severe." 20 C.F.R. § 404.1520(a). If the claimant lacks this kind of impairment, disability benefits are denied. 20 C.F.R. § 404.1520(c).

If at least some of the claimant's impairments are severe, the Commissioner proceeds to the third step to determine whether the impairment is equivalent to one or more impairments that the Commissioner has recognized to be so severe that they are presumed to preclude SGA. *See* 20 C.F.R. § 404.1520(d). These are listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments or the Listings).

3   - OPINION AND ORDER

The Listings describe, for each of the major body systems, impairments which qualify as severe enough to be construed as *per se* disabling.  20 C.F.R. §§ 404.1525, 416.925; *Tackett v. Apfel*, 180 F.3d 1094, 1099 (9th Cir. 1999).  The claimant has the burden of producing medical evidence that establishes all of the requisite medical findings.  *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005); *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987).  If the claimant's condition meets or equals one in the Listing of Impairments, the claimant is presumed conclusively to be disabled.

If the impairment is not one that is presumed to be disabling,  the Commissioner determines the claimant's RFC, which is the most an individual could do in a work setting despite the total limiting effects of all the claimant's impairments.  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1) and Social Security Ruling (SSR) 96-8p.

Then the Commissioner proceeds to the fourth step to determine whether the impairment prevents the claimant from engaging in work that the claimant has performed in the past.  If the claimant is able to perform his or her former work, a finding of "not disabled" is made and disability benefits are denied.  *See* 20 C.F.R. § 404.1520(e).

If the claimant is unable to perform work that he or she has performed in the past, the Commissioner proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his or her age, education, and work experience.

In this five-step framework used by the Commissioner, the claimant has the burden of proof as to steps one through four.  Accordingly, the claimant bears the initial burden of establishing his or her disability.

However, in step five, the burden shifts to the Commissioner to show there are a significant number of jobs in the national economy that the claimant can perform given his or her RFC, age, education, and work experience. *Hoopai*, 499 F.3d at 1074-75 (citations omitted).

If the Commissioner cannot meet this burden, the claimant is considered disabled for purposes of awarding benefits under the Act. *See* 20 C.F.R. § 404.1520(f)(1). If the Commissioner meets this burden, the claimant is deemed not disabled for purposes of determining benefits eligibility. 20 C.F.R. §§ 404.1566, 404.1520(g).

The Commissioner's decision must be affirmed if it is based on proper legal standards and its findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Tackett*, 180 F.3d at 1097-98 (citations omitted); *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citations omitted). Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Orn v. Astrue*, 495 F.3d  625, 630 (9th Cir. 2007) (citations and quotations omitted). This court must uphold the Commissioner's denial of benefits even if the evidence is susceptible to more than one rational interpretation, as long as one of the interpretations supports the decision of the ALJ. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citation omitted).

The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. *Tackett*, 180 F.3d at 1098 (quotation and citation omitted). The Commissioner, not the reviewing court, must resolve conflicts in the evidence, and the Commissioner's decision must be upheld in instances in which the evidence would support either

outcome. *Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003) (citation omitted); *Reddick v. Chater*, 157 F.3d 715, 720-21 (9th Cir. 1998) (citations omitted).

A decision to deny benefits may be set aside only if the ALJ's findings are based on legal error or are not supported by substantial evidence in the record. *Benton*, 331 F.3d at 1035.

**SUMMARY OF THE ALJ'S FINDINGS**

At step one of the sequential analysis, the ALJ found that plaintiff had met insured status requirements through December 31, 2003, and had not engaged in SGA at any time relevant to his application for benefits. Tr. 29.

At step two, the ALJ found that plaintiff suffered from the following severe impairments: fibromyalgia, depression, and migraine headaches. Tr. 29.

At step three, the ALJ found that plaintiff's impairments did not meet or equal the requirements of a listed impairment in the Listing of Impairments. Tr. 30. The ALJ determined that plaintiff had the RFC "to understand, remember, and carry out simple 1-2 instructions at a light exertional level with occasional postural limitations." Tr. 30. These limitations included occasionally lifting or carrying up to twenty pounds, frequently lifting or carrying up to ten pounds, standing or walking up to six hours in an eight-hour workday, sitting up to six hours in an eight-hour workday, and other limitations discussed as necessary below. Tr. 30.

At step four, the ALJ found that plaintiff was not able to perform his past relevant work. Tr. 35.

At step five, the ALJ found that in light of plaintiff's RFC, plaintiff could perform work existing in significant numbers in the national economy. The ALJ relied upon testimony from the VE that suggested plaintiff could work as a folding machine operator, ticket printer, or

laundry sorter. Tr. 35-36. Accordingly, the ALJ was compelled to conclude that plaintiff was not eligible for disability benefits.

## QUESTION PRESENTED

Plaintiff contends that this court should reverse the Commissioner's final decision and remand this action for an award of benefits. Plaintiff alleges five primary arguments: (1) the ALJ improperly rejected the disability determination rendered by the VA; (2) the ALJ improperly found plaintiff less than credible; (3) the ALJ erred in the evaluation of lay testimony; (4) the ALJ improperly rejected the opinions of plaintiff's physicians; and (5) the ALJ's analysis at step five was erroneous and his RFC findings were inadequate.

## DISCUSSION

1. **VA Disability**

As summarized above, the VA granted plaintiff seventy percent service connection for Major Depressive Disorder, fifty percent service connection percentages for migraine headaches, twenty percent service connection for fibromyalgia, and ten percent service connection for glaucoma. Tr. 81-82. Plaintiff was "granted entitlement to 100 percent rate effective December 28, 2001, because [plaintiff was] unable to work" due to service-connected disability-disabilities. Tr. 83.

An ALJ must typically give great weight to a VA determination of disability. *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002). Such VA determinations are not binding, however, because the criteria used by the VA and SSA for determining disability are not identical. *McCartey*, 298 F.3d at 1076. *See also* 20 C.F.R. § 404.1504. If the ALJ elects to give

less weight to the VA determination, the ALJ must give persuasive, specific, valid reasons for doing so that are supported by the record. *McCartey*, 298 F.3d at 1076.

Plaintiff argues that the ALJ failed to provide persuasive, specific, valid reasons for discounting the VA disability determinations in this action, and wrongfully construed the VA disability criteria as being "vastly different" from the Social Security Disability criteria. Reply at 1.

Plaintiff exaggerates the analysis and reasoning provided by the ALJ. The ALJ did not opine that the disability criteria were "vastly different." Instead, the ALJ engaged in a thorough discussion of the VA determinations regarding plaintiff. Tr. 30-34. First, the ALJ acknowledged that in 2001, the VA awarded plaintiff ninety percent service-connected disability benefits "due to major depressive disorder, fibromyalgia, and migraines," and that this award was increased to 100 percent in 2003 due to plaintiff's "unemployability." Tr. 30.

The ALJ then provided a detailed and persuasive explanation regarding the "unemployability" determination made by the VA. Tr. 30-31. The ALJ reasoned that because unemployability determinations were administrative and involved "no actual evaluating or consideration of what an individual can or can not do in a work setting," such determinations were among the "most significant differences between the VA and the Social Security disability programs and the evaluation process." Tr. 31.

The ALJ proceeded to address each of the VA ratings and the medical evidence pertaining to them. Tr. 31-34. The ALJ examined recent medical records and opined that the ratings made little sense. *Id*. The ALJ concluded that these records reflected improvement in plaintiff's health. Tr. 31. The ALJ thoroughly explained the weight attributed to the VA

"unemployability" rating, commenting that the rating was issued "even though the claimant had not been in the service since the 1990's, when he apparently experienced a single depressive episode in Naples, Italy," and had subsequently engaged in SGA and completed vocational training. Tr. 34. The ALJ provided persuasive, specific, and valid reasons for discounting the VA determinations.

    2.    **<u>Plaintiff's credibility</u>**

    Plaintiff argues that the ALJ erred in evaluating plaintiff's credibility. An ALJ need not believe every allegation of disabling pain or functional limitation advanced by a claimant. *See Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995). In determining a plaintiff's credibility, an ALJ should consider "ordinary techniques of credibility evaluation," including plaintiff's reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996); *see also Light v. Commissioner*, 119 F.3d 789, 792 (9th Cir. 1997). The ALJ also may consider a claimant's work record and the observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. *Id.*

    Under *Smolen* and its progeny, a two-step analysis applies at the administrative level when considering a claimant's subjective credibility. *Smolen*, 80 F.3d at 1281. First, the claimant must produce objective medical evidence of an impairment and show that the impairment could reasonably be expected to produce some degree of symptom. *Id.* at 1281-82. Even partial support from the medical evidence is sufficient. In the absence of evidence of malingering, an ALJ can reject the claimant's testimony about the severity of symptoms "only by offering specific, clear and convincing reasons for doing so." *Smolen*, 80 F.3d at 1281; *see also*

SSR 96-7p (ALJ's decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight").

Moreover, a claimant's statements cannot be rejected solely because the testimony is viewed as unsubstantiated by the available objective medical evidence.  20 C.F. R.§§ 404.1529(c)(2); 416. 929(c)(2).

Counsel for both parties concur that no substantive evidence of plaintiff's malingering was presented.  In evaluating plaintiff's credibility, the ALJ concluded that plaintiff's "statements regarding the intensity, duration and limiting effects of [his] symptoms are not entirely credible." Tr. 31.  The ALJ found plaintiff credible as to "the extent that he is unable to perform medium or heavier work," and then conducted a careful review of the medical testing and plaintiff's reports regarding his abilities to perform lighter work.  Tr. 31-32.  The ALJ also found that the "extent of the claimant's alleged mental limitations" was unsupported by the evidence of his medical reports and his documented improvements.  Tr. 32.  The ALJ also cited plaintiff's "internal inconsistencies" regarding his reported limitations, including contradictions in plaintiff's proffered reasons for selling his grocery business, the effects of his treatments, and the election of a "very conservative course of treatment for an extended period."  *Id*.  Similarly, the ALJ found that the evidence of plaintiff's activities were incongruent with his claims of limitations. Tr. 33-34.

An ALJ may properly rely on inconsistencies between a claimant's testimony and the claimant's conduct and daily activities.  *See, e.g., Thomas*, 278 F.3d at 958-59 (citation omitted). An ALJ also may consider "[t]reatment, other than medication;" "[f]unctional restrictions;"

"[t]he claimant's daily activities;" "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment;" and "ordinary techniques of credibility evaluation" in assessing the credibility of the allegedly disabling subjective symptoms. *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *see also* SSR 96-7p; 20 C.F.R. 404.1529 (2005); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (proper to rely on plaintiff's daily activities, and on conflict between claimant's testimony of subjective complaints and objective medical evidence in the record); *Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir. 1998) (proper to rely on weak objective support, lack of treatment, daily activities inconsistent with total disability, and helpful medication); *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995) (proper to rely on the fact that only conservative treatment had been prescribed or followed); *Orteza*, 50 F.3d at 750 (proper to rely in part upon claimant's daily activities).

Plaintiff disputes the ALJ's views that his condition has improved, and disagrees with other grounds that he has attributed to the ALJ in making plaintiff's credibility determination. Reply at 3. Plaintiff asserts that the ALJ relied upon plaintiff's "discussions with the veteran's group and receipt of benefits from the VA" as "legitimate reasons for discounting [plaintiff's] testimony." *Id.*

These allegations are unsupported in the record. The ALJ noted plaintiff's VA disability benefits and "a common theme" in plaintiff's pain management group in addressing the fact that plaintiff has not attempted to return to work. Tr. 34. These reasons were not relied upon by the ALJ to question plaintiff's credibility.

11 - OPINION AND ORDER

Regarding plaintiff's medical improvement, plaintiff contends that he has "established that his condition exacerbates and remits at times, and that the medical record shows his condition has <u>not</u> improved overall with treatment as the ALJ alleged."  Reply at 3.  Despite plaintiff's interpretation of the evidence, this court concludes that the ALJ's findings regarding plaintiff's testimony of subjective complaints and the conflicts arising between those complaints and objective medical reports were properly supported by substantial evidence in the record.  For example, the ALJ referred to a January 2002 neurological examination in which plaintiff's strength, bulk, tone and coordination were found to be normal.  Tr. 31, 253.  Additionally, the ALJ cited to an October 2003 "Physician's Note" in which plaintiff reported "in general doing better than last year."  Tr. 276.

These – and other – recorded reasons for viewing plaintiff's credibility as diminished, and the careful analysis provided by the ALJ regarding the evidence of plaintiff's capacities to engage in activities, Tr. 31-34, were supported by substantial evidence in the record and were of clear and convincing force.  Accordingly, despite plaintiff's differing view of the evidence, plaintiff's assignment of error regarding the ALJ's credibility determination is rejected.

3.    **Lay testimony**

Plaintiff argues that the ALJ improperly rejected the statement provided by plaintiff's wife addressing the activities plaintiff could undertake.  The ALJ concluded that the statement failed to "bolster the claimant's subjective complaints."  Tr. 34.  The ALJ noted that while the statement detailed plaintiff's alleged limitations, plaintiff's wife also "reported that [plaintiff] is able to take care of multiple pets, do laundry, engage in self-care, cook simple meals, grocery shop, perform light household chores, and go on walks."  *Id.* (citation omitted).

12 - OPINION AND ORDER

In determining a claimant's possible disability, an ALJ must consider lay witness testimony when it is presented.  20 C.F.R. §§ 404.1513(d)(4) & (e), 416.913(d)(4) & (e); *see also Stout v. Commissioner*, 454 F.3d 1050, 1053 (9th Cir. 2006) (citing *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)).  Lay testimony as to a claimant's symptoms or how an impairment affects a person is considered competent evidence and cannot be disregarded without comment.  *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (citations omitted).

To discount the testimony of lay witnesses, an ALJ must give reasons that are germane to each witness.  *Stout*, 454 F.3d at 1053; *see also Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) (lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless the ALJ "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so" (citations omitted)).  When an ALJ errs by failing to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless "unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1053.

However, if lay testimony is controverted by the medical evidence presented, the ALJ does not err by ignoring the lay testimony.  *Timmons v. Comm'r of Soc. Sec.*, 546 F. Supp. 2d 778, 795-96 (E. D. Cal. 2008) (citing *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984).  If the lay testimony is consistent with the medical evidence, then the ALJ must consider it and comment upon it.  *Id*. (citing *Stout*, 454 F.3d at 1053).  Moreover, in cases in which plaintiff alleges impairments "such as chronic fatigue or pain (which by their very nature do not always produce clinical medical evidence), it is impossible for the court to

conclude that lay witness evidence concerning the plaintiff's abilities is necessarily controverted such that it may be properly ignored," and, in such cases, the ALJ is required to consider lay witness evidence. *Timmons*, 546 F. Supp. 2d at 796.

Here, the ALJ commented upon the lay testimony at issue, plainly considered it in the evaluation of plaintiff's eligibility for SSA benefits, and determined that the statement itself was not dispositive (*e.g.*, that it did not "bolster" plaintiff's claims).

Plaintiff argues that "[a]t no point did the ALJ explain how a limited ability to start a load of laundry or let the dogs out, interspersed with rest breaks, was inconsistent with any of the limitations Mrs. Kenyon described," and that the "ALJ and the Commissioner have inexcusably ignored the context of Mrs. Kenyon's statement . . . ." Reply at 4. Plaintiff's accusation that the ALJ "inexcusably ignored" the lay testimony's "context" is unfounded. Tthe applicable standards for evaluating lay testimony do not require an ALJ to address the evidence and its "context" to the full satisfaction of plaintiff. The statement from plaintiff's wife was not ignored, or even rejected. The ALJ merely concluded that the evidence failed to resolve – or even bolster – plaintiff's claims. This conclusion was drawn properly and in accordance with all applicable standards.

4.    **Medical opinions**

Next, plaintiff contends that the ALJ improperly rejected the opinions of plaintiff's physicians Drs. Juan, Young and Donnelly. Plaintiff asserts that the ALJ ignored or improperly rejected (1) Dr. Juan's opinion that plaintiff suffered from Major Depression with a Global Assessment of Functioning (GAF) of 40, Tr. 321; (2) Dr. Young's opinion that plaintiff suffered from Major Depression with a GAF of 45, Tr. 319-20; and (3) Dr. Donnelly's opinion that

plaintiff suffered from Major Depression with a GAF score of 50 and had suicidal ideations, Tr. 358. The opinions of Drs. Juan and Young are addressed first.

Doctor Juan's assessment included a diagnosis of Major Depression and a GAF of 40. Tr. 321. Nothing more was provided that reflected any judgments about the nature and severity of plaintiff's impairments, his symptoms, diagnosis and prognosis, his physical or mental restrictions, or what plaintiff was capable of completing despite his alleged impairments. *See* 20 C.F.R. § 404.1527(a)(2). Accordingly, plaintiff's complaint that the ALJ failed to more fully address Dr. Juan's observations is without merit. The ALJ noted Dr. Juan's diagnosis, and reasonably concluded that subsequent testing and evaluations revealed that the alleged extent of plaintiff's mental limitations was unsupported by medical evidence. Tr. 32.

Doctor Young assessed plaintiff's GAF score at 45 in November 2002, but offered no judgments about the nature and severity of plaintiff's impairments or his symptoms. Tr. 319-20. Subsequent reports from Dr. Young indicated that plaintiff was in a better mood, had no psychosis, and did not have further suicidal ideations. Tr. 313-15.

An ALJ "need not discuss all evidence presented" to him or her. *Vincent*, 739 F.3d at 1394-95 (citation omitted) (emphasis omitted). The ALJ must only explain why "significant probative evidence has been rejected." *Id.*; *see also Cotter v. Harris*, 642 F.2d 700, 706-07 (3rd Cir. 1981); *Garfield v. Schweiker*, 732 F.2d 605, 610 (7th Cir. 1984).

Moreover, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." *Batson v. Commissioner of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Thomas*, 278 F.3d at 957; *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). Plaintiff's focus upon

two summary diagnoses from Drs. Juan and Young and his criticism of the ALJ's failure to more fully address these summaries is unpersuasive.

Doctor Donnelly assessed a GAF score of 50 in April 2003, noting that plaintiff had suicidal ideations, serious impairment in social functioning, minimal friends, and an inability to work. Tr. 358. The ALJ acknowledged Dr. Donnelly's opinion, but also concluded that subsequent mental status examinations indicated improvement in plaintiff's health. Tr. 32. To the extent that Dr. Donnelly's opinions could be construed as more than conclusory, and significantly probative, the ALJ adequately addressed the weight attributed to those opinions. The ALJ referred to subsequent medical examinations in May and August 2003 that indicated that "the claimant was observed to be well-groomed with normal speech, but exhibited a depressed, flat affect" and that claimant "denied suicidal ideation" and had good "insight and judgment." Tr. 32. The ALJ provided sufficiently specific and legitimate reasons that were supported by substantial evidence in the record for the weight given to Dr. Donnelly's opinions. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996).

        5.        **The ALJ's analysis at step five**

Finally, plaintiff argues that the ALJ erred at step five. Plaintiff challenges the conclusion that plaintiff could perform the occupations of folding machine operator or laundry sorter. Tr. 36; 564-66.

In questioning the VE, the ALJ provided hypothetical functional limitations that were similar to the RFC the ALJ determined for plaintiff, except that the ALJ's hypothetical individual suffered "moderate limitation in the ability to understand and remember detailed instructions, carry out the detailed instructions, and interacting appropriately with the general public." Tr.

16 - OPINION AND ORDER

563-64.  In the ALJ's subsequent ruling, however, the ALJ determined that plaintiff had the RFC

to  understand, remember, and carry out simple, one to two-step instructions at a light exertional

level with occasional postural limitations.  Tr. 30.

The ticket printer occupation fits within the RFC limitations that the ALJ provided in

questioning the VE, and those also attributed to plaintiff in the ALJ's ruling.  Response at 16.

The occupations of laundry sorter and folding machine operator, however, are beyond plaintiff's

capacities as found by the ALJ, and "[t]o the extent that these occupations exceeded Plaintiff's

residual functional capacity – as described in the ALJ's decision – the Commissioner concedes

that the ALJ erred (Tr. 30, 36)."  Response at 17.  Defendant asserts this error was harmless

because the single occupation of ticket printer exists in significant numbers in the national

economy.  *Id*.

The Ninth Circuit has held that this type of error is not harmless.  "One occupation does

not constitute a significant range of work" as that phrase is defined when interpreting the

applicable SSA regulations required in the step-five analysis.  *Lounsburry v. Barnhart*, 468 F.3d

1111, 1117 (9th Cir. 2006) (*but see Tommasetti v. Astrue*, 533 F.3d 1035, 1043-44 (9th Cir.

2008) (*Lounsburry's* definition of "significant range" pertains to the light work analysis under

SSR 202.00(c) but does not extend to a sedentary work analysis)).

Plaintiff's related argument that the ALJ erred in omitting limitations resulting from

plaintiff's migraine headaches when calculating plaintiff's RFC is rejected.   Even if at step two

the ALJ found that plaintiff's migraine headaches *alone* constituted a severe impairment, the ALJ

was not, as plaintiff insists, required to incorporate that impairment in the step five analysis:

> At step five a vocational expert's testimony is required when a
> non-exertional limitation is "'sufficiently severe' so as to significantly limit the

range of work permitted by the claimant's exertional limitation." *Id.*  The step two and step five determinations require different levels of severity of limitations such that the satisfaction of the requirements at step two does not automatically lead to the conclusion that the claimant has satisfied the requirements at step five.

The regulations guiding the step-two determination of whether a disability is severe is merely a threshold determination of whether the claimant is able to perform his past work.  Thus, a finding that a claimant is severe at step two only raises a prima facie case of a disability.  In contrast, the step-five determination is necessary to ascertain whether there is a significant number of jobs in the national economy that the claimant can perform.

*Hoopai*, 499 F.3d at 1076 (citation omitted).

## CONCLUSION

After analyzing each of these arguments, and the remainder of plaintiff's contentions, this court concludes that the error committed by the ALJ regarding the finding that in light of plaintiff's RFC, plaintiff could perform work existing in significant numbers in the national economy, including jobs as a folding machine operator or laundry sorter, is not harmless and compels the remand of this action.  As noted above, 42 U.S.C. § 405(g) provides jurisdiction for this court to review administrative decisions in Social Security benefits cases.  A court may remand a Social Security disability case under either sentence four or sentence six of 42 U.S.C. § 405(g).  *Hoa Hong Van v. Barnhart*, 483 F.3d 600, 605 (9th Cir. 2007).  A sentence-four remand is essentially a determination that the Commissioner erred in some respect in denying benefits.  *Id.* (citations omitted).

Sentence four provides that the district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing" and is "essentially a determination that the agency erred in some respect in reaching a decision to

deny benefits." *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002) (quoting 42 U.S.C. §

405(g) and citing *Jackson v. Chater*, 99 F.3d 1086, 1095 (11th Cir. 1996)).

The issues presented here compel a remand under sentence four.  The decision whether to

remand under sentence four for further proceedings or for immediate payment of benefits is

within the discretion of the court.  *Benecke v. Barnhart*, 379 F.3d 587, 590 (9th Cir. 2004).

"[A] remand for further proceedings is unnecessary if the record is fully developed and it

is clear from the record that the ALJ would be required to award benefits."  *Holohan v.

Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001).

In this matter, this court concludes that outstanding issues remain that must be resolved

before a determination of disability can be made.  Further proceedings will be useful, and I

exercise the discretion of the court to remand this case for additional administrative proceedings

that address plaintiff's functional assessments and whether plaintiff can perform work existing in

significant numbers in the national economy.  The parties may revisit the issue of determining

plaintiff's RFC, and may invoke the assistance of a VE to ascertain whether work that plaintiff

can perform exists in significant numbers in the national economy.  The court reiterates,

however, that plaintiff's assignments of error regarding issues *other than* the ALJ's step-five

analysis have been considered are found to be without merit.

IT IS SO ORDERED.

DATED this    30    day of April, 2009.

   /s/ ANCER L. HAGGERTY   
ANCER L. HAGGERTY
United States District Judge

19 - OPINION AND ORDER